IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
BY MAIL
AUG 12 2005
CLERK, US DIST. COURT
ST. PAUL, MN

Therase Lashown Warren
Petitioner,

V.

United States of America
Respondant,

Civil Case No. 05-805 (DWF)
CR 02-248 DWF/SRN

August 4, 2005

NOTICE OF SUPPLEMENTAL AUTHORITY

Now comes the petitioner, Therase Lashown Warren pro se, acting in the above matter, Asking this court to accept this supplemental authority to the petitioner's 28,U.S.C.§2255, under **Rule 15a, Amended and Supplemental Pleadings.** This case, **United States v. Edwards** (see **exhibit A**), relates to the petitioner's case, within the one-year period limitation of **Supreme Court ruling: United States v. Dobbs.** Therefor the petitioner prays that this court grants the petitioner's motion to supplement to his **28,U.S.C. §2255.**

I hereby certify that a copy of the forgoing motion was sent to the Assistant United States Attorney JEFFREY S. PAULSEN and the Clerk of the Court, **IN THE UNITED STATES DISTRICT COURT, DISTRICT OF MINNESOTA.** Under the penalty of purgery,**28,U.S.C.1746.**

Therase Warren
Therase Lashown Warren
FCI
P.O.Box 33
Terre Haute, IN. 47808

SCANNED
AUG 12 2005
U.S. DISTRICT COURT ST. PAUL

possible augmentation of charges or sentencing or departure downward. Taking all those things into consideration, no, sir, nobody has quote-unquote twisted my arm to make this plea. This is done of my own free will.

(App. at 22–24.)

[8, 9] A plea agreement is constitutionally valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *United States v. Kelly,* 337 F.3d 897, 904 (7th Cir.2003) (citing *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)). A trial judge has discretion to accept a guilty plea even when the defendant has declared his innocence as long as there is adequate evidence of guilt. *See Higgason v. Clark,* 984 F.2d 203, 208 (7th Cir.), *cert. denied,* 508 U.S. 977, 113 S.Ct. 2974, 125 L.Ed.2d 672 (1993). We find that Hays's colloquy with the court, and the evidence of guilt in the record, establishes that his plea agreement was voluntary and intelligent.

### III. Conclusion

Hays pled guilty to tampering with and fraudulently possessing OxyContin. He now argues that his counsel was ineffective and that his guilty plea was involuntary. These claims have no merit. He had a difficult decision to make, and he must now live with the consequences of that decision. The denial of his § 2255 motion is AFFIRMED.

KEY NUMBER SYSTEM

**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Carl EDWARDS, Defendant–Appellant.**

**No. 03–4234.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 30, 2004.

Decided Feb. 11, 2005.

**Background:** Defendant was convicted pursuant to his guilty pleas of possession with intent to distribute more than 50 grams of cocaine base. The United States District Court for the Northern District of Illinois, Milton I. Shadur, J., 294 F.Supp.2d 954, imposed two statutory mandatory minimum sentences of 10 years applicable to offenses involving cocaine base. Defendant appealed.

**Holding:** The Court of Appeals, Sykes, Circuit Judge, held that mandatory minimum sentence is applicable to only those cocaine base offenses involving crack cocaine.

Reversed.

**1. Controlled Substances ⚷100(2)**

Statutory mandatory minimum sentence for crimes involving cocaine base takes precedence over sentencing range computed under Sentencing Guidelines. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(b)(1)(A)(iii), 21 U.S.C.A. § 841(b)(1)(A)(iii); U.S.S.G. § 5G1.1(b), 18 U.S.C.A.

**2. Controlled Substances ⚷100(2)**

Mandatory minimum sentence under statute for offenses involving manufacture, distribution, or possession with intent to manufacture or distribute 50 grams or more of "cocaine base" applies to crack offenses only. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(b)(1)(A)(iii), 21 U.S.C.A. § 841(b)(1)(A)(iii).

See publication Words and Phrases for other judicial constructions and definitions.

**3. Controlled Substances ⚷100(2)**

Imposition of two ten-year mandatory minimum sentences on defendant for possession with intent to distribute 50 grams or more of noncrack forms of cocaine base, premised on court's erroneous conclusion that any form of cocaine base qualified for mandatory minimum, was error. Comprehensive Drug Abuse Prevention and Control Act of 1970, § 401(b)(1)(A)(iii), 21 U.S.C.A. § 841(b)(1)(A)(iii).

West Codenotes

**Recognized as Unconstitutional**

18 U.S.C.A. § 3553(b)(1)

---

Debra Riggs Bonamici (argued), Office of the United States Attorney, Chicago, IL, for Plaintiff–Appellee.

Nishay K. Sanan (argued), Chicago, IL, for Defendant–Appellant.

Before ROVNER, WOOD, and SYKES, Circuit Judges.



SYKES, Circuit Judge.

All crack is cocaine base but not all cocaine base is crack. This case presents the question of whether this distinction is meaningful for purposes of the enhanced penalties for cocaine base offenses under 21 U.S.C. § 841(b). The statute prescribes a mandatory minimum sentence of ten years for the manufacture, distribution, or possession with intent to manufacture or distribute 50 grams or more of "cocaine base." 21 U.S.C. § 841(b)(1)(A)(iii). The federal Sentencing Guidelines also call for increased penalties, in the form of heightened base offense levels, for crimes involving "cocaine base." *See* U.S.S.G. § 2D1.1(c). But while the Guidelines define "cocaine base" as "crack" for purposes of the higher penalties, *see* U.S.S.G. § 2D1.1(c), Note (D), the statute contains no such limiting definition. The question in this case is whether the mandatory minimum sentence in the statute applies, like the Guidelines, to crack offenses only.

We have addressed a variation of this question before, although in a case that arose before the Guidelines were amended to specifically define "cocaine base" as "crack" for purposes of the higher Guidelines penalties. In *United States v. Booker,* 70 F.3d 488, 494 (7th Cir.1995),[1] we held that because "Congress and the Sentencing Commission intended 'cocaine base' to mean crack cocaine," the enhanced penalties in § 841(b) and the Guidelines "apply to crack cocaine, and the lesser

1. Not to be confused with a more recent case from this circuit by the same name, *United States v. Booker,* 375 F.3d 508 (7th Cir.2004), just affirmed by the United States Supreme Court, *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, 2005 WL 50108 (January 12, 2005), which applied the rule of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), to the federal Sentencing Guidelines and found a Sixth Amendment violation. As a remedy, the Court severed and excised from the Sentencing Reform Act of 1984 the provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), effectively rendering the Guidelines advisory. *Booker,* —— U.S. at ——, 125 S.Ct. 738, 2005 WL 50108, at *16.

penalties apply to all other forms of cocaine." We reiterated this holding in *United States v. Reddrick*, 90 F.3d 1276, 1282 (7th Cir.1996), and also referred to it in three subsequent cases applying the amended guideline definition which limits the applicability of the higher Guidelines penalties to offenses involving only the subset of "cocaine base" that constitutes "crack." *See United States v. Earnest*, 129 F.3d 906, 915–16 (7th Cir.1997); *United States v. Adams*, 125 F.3d 586, 591–92 (7th Cir.1997); *United States v. Hall*, 109 F.3d 1227, 1236 (7th Cir.1997).

A footnote in *Adams* led the district court in this case to conclude that *Booker* notwithstanding, the applicability of the statutory ten-year minimum sentence to an offense involving "cocaine base" that is not "crack" is an open question in this circuit. *United States v. Edwards*, 294 F.Supp.2d 954, 959–60 (N.D.Ill.2003). Looking elsewhere for guidance, the court adopted the reasoning of *United States v. Barbosa*, 271 F.3d 438, 467 (3d Cir.2001), in which the Third Circuit held that Congress intended the mandatory minimum sentence to apply to offenses involving any form of cocaine base, whether crack or not. *Edwards*, 294 F.Supp.2d at 960. The district court found that the controlled substance in this case was not "crack" but was "cocaine base" and on that basis imposed the mandatory ten-year sentence. *Id.*

We reverse. *Booker* held that for purposes of the enhanced penalties in the Guidelines *and* the statutes "cocaine base" means "crack cocaine." *Booker*, 70 F.3d at 489–90, 494. That holding controls here, and we decline to revisit it. We note a substantial divergence among the circuits on this issue. Some circuits, like this one, have equated the statutory term "cocaine base" to "crack." Some have held that any form of "cocaine base" qualifies for the mandatory minimum sentence. Others have adopted a hybrid approach that includes any *smokable* form of cocaine base within the statutory term—including, but apparently not limited to, crack. *See Part II, infra.*

## I. Background

Carl Edwards was indicted on two counts of possession with intent to distribute more than 50 grams of a substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1). Edwards offered pleas of guilty while reserving his right to contest the nature of the substances involved; he admitted they contained cocaine but denied it was either cocaine base or crack. The district court held that Edwards' pleas were knowing and voluntary but deferred accepting them to avoid triggering Edwards' immediate detention and to await determination of the nature of the substance at an evidentiary hearing. *Edwards*, 294 F.Supp.2d at 955–56.

At the subsequent hearing the government's expert, Dr. James DeFrancesco, testified that on the basis of laboratory testing, the substances in Edwards' possession were cocaine base. He opined further that the substances were crack cocaine, basing this conclusion not on scientific tests or expert examination but on the definition in the Sentencing Guidelines, which reads:

> "Cocaine base," for the purposes of this guideline, means "crack." "Crack" is the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.

U.S.S.G. § 2D1.1(c), Note (D). Because DeFrancesco relied exclusively on the legal definition of "cocaine base" rather than scientific evidence, the district court rejected his conclusion that the substances Edwards possessed were crack. *Id.* at 957.

Edwards' expert, Dr. Michael Evans, agreed with Dr. DeFrancesco that the substances were cocaine base in the chemical sense but testified that they did not constitute crack. His laboratory tests revealed none of the telltale signs of crack; among other things, the substances did not exhibit the color or form that results from the process of mixing cocaine hydrochloride (powder cocaine) with sodium bicarbonate to produce crack. The district court accepted Dr. Evans' conclusions and found by a preponderance of the evidence that the substances in Edwards' possession were a noncrack form of cocaine base.[2] *Id.* at 958.

To determine Edwards' sentence, the court turned first to § 2D1.1(c) of the Guidelines, the Drug Quantity Table, which specifies that the base level for an offense involving a quantity of cocaine base is the same as for an offense involving 100 times that quantity of cocaine. *Id.*; *see also Booker*, 70 F.3d at 489. Pursuant to the Guidelines definition quoted above, however, only crack is subjected to the heightened penalties; forms of cocaine base other than crack are sentenced like other forms of cocaine, most notably, powder cocaine. Under the Guidelines an offense involving just over 100 grams of cocaine yields a base offense level of 16, which in light of Edwards' criminal history results in a sentencing range of 24–30 months.



**[1]** The statutory minimum sentence for "cocaine base," however, is ten years, 21 U.S.C. § 841(b)(1)(A)(iii), and it takes precedence. *United States v. Schaefer*, 107 F.3d 1280, 1285 (7th Cir.1997); U.S.S.G. § 5G1.1(b). Relying on the Third Circuit's decision in *Barbosa*, the district court concluded that the statutory mandatory minimum applies to all forms of cocaine base, not just crack, and imposed two concurrent ten-year terms of imprisonment.

## II. Discussion

**[2]** Congress enacted the mandatory minimum sentence for cocaine base in 1986 as part of the Anti-Drug Abuse Act. *See* Pub.L. 99–570, § 1002(2) (Oct. 27, 1986). The statute does not define "cocaine base." Prior to 1993, § 2D1.1(c) of the Guidelines, like the statute, also contained no definition of "cocaine base." In 1993, however, the Sentencing Commission amended § 2D1.1(c) to define cocaine base as "crack" for Guidelines sentencing purposes. *See* 58 Fed.Reg. 27148, 27156 (May 6, 1993). The definition took effect November 1, 1993. *Booker* was decided after the new definition took effect, but Booker's conviction related to events predating the amendment's effective date, so the court applied the earlier version of the Guidelines. *Booker*, 70 F.3d at 489–90 n. 3.

The defendant in *Booker* argued that the sentencing provisions in § 841(b) and the Guidelines differentiating between "cocaine" and "cocaine base" were ambiguous

2. Although the district court briefly discussed *Apprendi* in its decision in this case, *see United States v. Edwards*, 294 F.Supp.2d at 956, no argument under *Apprendi* or *Blakely* has been made on appeal. The Supreme Court has held that the *Apprendi* rule does not extend to statutory minimum penalties. *See Harris v. United States*, 536 U.S. 545, 566–68, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion of Justice Kennedy reaffirming *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and finding it distinguishable from *Apprendi*) and *Harris*, 536 U.S. at 569–70, 122 S.Ct. 2406 (concurring opinion of Justice Breyer disagreeing that *Apprendi* and *McMillan* are distinguishable but joining the plurality "to the extent that it holds that *Apprendi* does not apply to mandatory minimums"). *See also United States v. Souffront*, 338 F.3d 809, 827 (7th Cir.2003).

(and therefore the rule of lenity should apply) because in chemical terms "cocaine" and "cocaine base" are identical. *Booker*, 70 F.3d at 489. Cocaine in its natural state is a base; "cocaine" and "cocaine base" thus have the same chemical formula, $C_{17}H_{21}NO_4$. *Id.* at 490. We noted in *Booker* that most cocaine imported into this country is first converted into cocaine hydrochloride (cocaine salt), having the chemical formula $C_{17}H_{22}ClNO_4$, and commonly referred to as powder cocaine. *Id.* at 490–91.

Powder cocaine can be converted back into base cocaine by a process that "frees" the base from the hydrochloride. *Id.* at 491. Cocaine "freebase," popular in the 1970s, is produced by mixing cocaine hydrochloride with ammonia and ether or another organic solvent. *Id.* "Crack" is the street name for another form of freebase cocaine, produced by mixing cocaine hydrochloride with baking soda and water, boiling the mixture until only a solid substance is left, and allowing it to dry, resulting in a rocklike substance. *Id.* Smokable and therefore more potent than ordinary powder cocaine, crack rivals freebase cocaine in terms of its potency while avoiding the hazards of freebasing, which requires the use of flammable ether. *Id.* Freed of the hydrochloride, the cocaine returns to its base form—whether in the physical form of crack or otherwise—and is again chemically identical to "cocaine." Thus, the question of statutory ambiguity arose: although "cocaine base" and "cocaine" are scientifically synonymous, § 841(b) assigns enhanced penalties to offenses involving 50 grams or more of "cocaine base" but requires 5 kilograms or more (a 100:1 ratio) of "cocaine" or "its salts" to trigger the enhanced penalties. *Id.*

We held in *Booker* that despite the chemical identity between cocaine and cocaine base, "the legislative history of § 841(b) demonstrates that Congress intended the terms to have different meanings." *Id.* at 492. We acknowledged the probable ambiguity if the statutory text alone were considered, given that the same penalty applied to 5 kilograms of "cocaine," § 841(b)(1)(A)(ii), as 50 grams of "cocaine base," § 841(b)(1)(A)(iii), although the two are chemically the same. *Id.* at 492. Canvassing the legislative history, we concluded that the overriding Congressional concern behind the stiffer penalties for cocaine base was the alarming rise in the use of crack, "a new, smokable form of cocaine that was more dangerous than powder cocaine, less expensive, and highly addictive." *Id.* at 492–94. We noted the ongoing debate over whether the dangers of crack justified the size of the sentencing differential, *id.* at 494, but concluded that "whatever the merits of the distinction, it is clear that Congress intended the enhanced penalties to apply to crack cocaine and the lesser penalties to apply to all other forms of cocaine." *Id.* The Sentencing Commission, we said, was similarly motivated. *Id.* Accordingly, we held in *Booker* that "the sentencing provisions for 'cocaine' and 'cocaine base' are not ambiguous because although the terms have the same scientific meaning, both Congress and the Sentencing Commission intended 'cocaine base' to mean crack cocaine." *Id.*

Unlike this case, there was never any dispute in *Booker* that the substance at issue was crack, so the precise question confronting us here was not present there. We reiterated *Booker's* holding in *Reddrick*, 90 F.3d at 1282, but *Reddrick* raised a Guidelines issue only and did not address the statute's mandatory minimum sentence. We also cited *Booker* in three cases addressing the 1993 amendment to the Guidelines that defined "cocaine base" as "crack" for purposes of Guidelines sentencing. *See Earnest*, 129 F.3d at 916–17; *Adams*, 125 F.3d at 592; *Hall*, 109 F.3d at 1236. *Hall* unequivocally states that *Booker* defined "cocaine base" as "crack" for purposes of § 841. *Hall*, 109 F.3d at 1236. Even so, none of these cases raised the specific issue of the mandatory minimum sentence in § 841(b).

A footnote in *Adams* took note of *United States v. Munoz–Realpe*, 21 F.3d 375 (11th Cir.1994), in which the Eleventh Circuit held that the term "cocaine base" in a parallel mandatory minimum statute, 21 U.S.C. § 960(b), must be interpreted consistently with the Guidelines definition. *See Adams*, 125 F.3d at 591 n. 4. *Munoz–Realpe* reasoned that by allowing the Guidelines amendment to take effect, "Congress has given its imprimatur to the new definition of 'cocaine base'" for purposes of the statute. *Munoz–Realpe*, 21 F.3d at 377. We noted in *Adams* the existence of a circuit split on the scope of the term "cocaine base" for purposes of the statutory minimums but declined to take a position: "The interpretation of 'cocaine base' within 21 U.S.C. § 960(b) is not at issue in the present case and we decline to express any opinion on that issue." *Adams*, 125 F.3d at 591 n. 4.

Because the language of § 841(b) is identical to § 960(b)—the latter applies to cocaine importation offenses—the district court in this case read the *Adams* footnote to mean that this court had reserved ruling on the interpretation of "cocaine base" for statutory, as opposed to Guidelines, purposes. *Edwards*, 294 F.Supp.2d at 960. The district court acknowledged, however, that the situation was "a bit muddied" because our earlier decision in *Booker* addressed the interpretation of the term in both contexts. *Id.* at 959. In any event, the district court determined that in light of the statement in *Adams*, "it must deal with the statutory question as one of first impression in our Circuit," *id.* at 960, and adopted the reasoning of *Barbosa*. There, the Third Circuit held that "while the term 'cocaine base' means only crack when a sentence is imposed under the Sentencing Guidelines, 'cocaine base' encompasses all forms of cocaine base with the same chemical formula when the mandatory minimum sentences under 21 U.S.C. § 841(b)(1) are implicated." *Barbosa*, 271 F.3d at 467.

We regret that the footnote in *Adams* may have misled the district court to conclude that *Booker* is no longer good law on the meaning of "cocaine base" in 21 U.S.C. § 841(b). The analysis in *Booker* was not limited to the use of the term "cocaine base" in the Guidelines. *Booker* interpreted both the statute and the pre-1993 guideline, with a nod of recognition to the post-1993 guideline definition. *Booker* held that the enhanced penalties for cocaine base in the Guidelines *and* the statutes "apply to crack cocaine, and the lesser penalties apply to all other forms of cocaine." *Booker*, 70 F.3d at 494. That holding remains the law in this circuit.

Indeed, based on *Booker*, the government initially confessed error in this case but at our request briefed the statutory interpretation question. We are not persuaded that *Booker* was wrongly decided. If any form of cocaine base (not just crack) qualifies for the enhanced penalties in the statute, then subsection (iii) swallows subsection (ii), because "cocaine base" (subsection (iii)) is chemically the same as "cocaine" (subsection (ii)).

We acknowledge a significant division among the circuits on this issue, with no clear majority rule and at least three distinct approaches. Some circuits have held, like *Booker*, that the mandatory minimum sentence under the statute applies only to crack, based in whole or in part on the legislative history of the 1986 Anti–Drug Abuse Act. *See United States v. Fisher*, 58 F.3d 96, 99 (4th Cir.1995) (relying on analysis of statutory language as well as legis-

lative history); *United States v. Crawford*, 83 F.3d 964, 965 (8th Cir.1996) (agreeing with analysis of legislative history in *Booker*). As we have discussed, the Eleventh Circuit reached the same conclusion by a different route in *Munoz-Realpe*, holding that by allowing the amended definition in the Guidelines to take effect, Congress approved the new "crack only" definition for purposes of the statute as well. *Munoz-Realpe*, 21 F.3d at 377.

The Sixth Circuit in *United States v. Levy*, 904 F.2d 1026 (6th Cir.1990), appears to have reached the conclusion that "cocaine base" in the statute means crack ("Levy recognizes the congressional intent behind the insertion of the phrase 'cocaine base' was to impose stiffer sentences upon those who traffic in crack cocaine," *id.* at 1033), but the court simply assumed that cocaine base and crack are equivalent in all senses.

The Ninth Circuit has limited the term "cocaine base" to "cocaine that can be smoked," which includes but might not be limited to crack (the court's opinion was unclear on this point). *United States v. Shaw*, 936 F.2d 412, 415–16 (9th Cir.1991) (relying on legislative history). The District of Columbia Circuit has rejected the argument that the term "cocaine base" should be read literally to include anything that chemically constitutes base cocaine, but has declined to adopt the "crack only" definition. *United States v. Brisbane*, 367 F.3d 910, 913–14 (D.C.Cir.2004). The court in *Brisbane* reviewed the legislative history of the statute and found "much evidence" that Congress "was targeting crack," but at the same time found it "unlikely [that] Congress intended to limit the enhanced penalty provision to one manufacturing method." *Id.* at 913. The court cited *Shaw* with approval, finding merit to its interpretation that " 'cocaine base' means any cocaine that is smokable." *Id.* at 914 ("The Ninth Circuit's approach avoids the difficulties inherent in the 'literal' approach while not unduly narrowing the operation of the statute."). In the end, however, the *Brisbane* court concluded that it "need not choose between the two options because both lead to the same result. Here the government did not prove that the substance distributed was smokable and it did not prove that it was crack." *Id.*

Other circuits are diametrically opposed to *Booker*. The Second Circuit acknowledged that in passing the mandatory minimum sentence for cocaine base Congress was concerned with the problem of crack. *United States v. Jackson*, 968 F.2d 158, 162 (2d Cir.1992). But the court concluded that by using the chemical name, cocaine base, rather than the colloquial name, crack, Congress intended not to limit application of the enhanced penalties to crack alone, and nothing in the legislative history dispelled that plain-language reading. *Id.* In *Barbosa*, the opinion adopted by the district court here, the Third Circuit held that passage of the 1993 guideline amendment did nothing to cast doubt on the plain meaning of the statutory text, which does not limit cocaine base to the form known as crack. *Barbosa*, 271 F.3d at 466–67. The Fifth Circuit has held that the term "cocaine base" in § 841(b) encompasses noncrack forms of cocaine base. *United States v. Butler*, 988 F.2d 537, 542–43 (5th Cir.1993). The Tenth Circuit has adopted the Second Circuit's conclusion in *Jackson* without elaboration. *United States v. Easter*, 981 F.2d 1549, 1558 (10th Cir. 1992).

And, finally, in *United States v. Lopez-Gil*, 965 F.2d 1124 (1st Cir.1992), the First Circuit initially held that "cocaine base" for purposes of § 841(b) means "crack," but on rehearing retreated from that position: "Although we continue to believe that Congress indeed was concerned primarily with the crack epidemic in enacting the legislation, the Government now persuades us that it does not necessarily follow that the term 'cocaine base' includes *only* crack." *Lopez-Gil*, 965 F.2d at 1134 (emphasis in original).

[3] A lingering and stratified circuit split on a matter of such importance to the administration of criminal justice surely warrants the attention of Congress or resolution by the Supreme Court. In the meantime, however, we reaffirm our circuit's holding in *Booker* that for purposes of the mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(A)(iii), the phrase "cocaine base" refers to cocaine base that constitutes crack. Edwards' two ten-year sentences were premised on the district court's factual finding that Edwards possessed noncrack forms of cocaine base and its legal conclusion that any form of cocaine base qualified for the mandatory minimum. The district court's legal conclusion was in error; we therefore reverse and remand for resentencing in accordance with this opinion.

REVERSED.



**SARKES TARZIAN, INC., Plaintiff–Appellee–Cross–Appellant,**

**v.**

**U.S. TRUST COMPANY OF FLORIDA SAVINGS BANK, Defendant–Appellant–Cross–Appellee.**

**Nos. 03–2994, 03–3098.**

United States Court of Appeals, Seventh Circuit.

Argued April 8, 2004.

Decided Feb. 14, 2005.

Rehearing and Rehearing En Banc Denied March 21, 2005.*

**Background:** Unsuccessful buyer brought action against seller alleging breach of oral contract for sale of non-publicly traded shares of stock. The United States District Court for the Southern District of Indiana, Richard L. Young, J., entered judgment on jury verdict in buyer's favor, and denied seller's motion for judgment as matter of law. Seller appealed.

**Holdings:** The Court of Appeals, Williams, Circuit Judge, held that:

(1) attorney did not have actual authority to bind seller, and

(2) attorney did not have apparent authority to bind seller.

Reversed and remanded.

**1. Federal Courts ⚷776**

Court of Appeals reviews de novo district court's denial of motion for judgment as matter of law. Fed.Rules Civ.Proc.Rule 50, 28 U.S.C.A.

**2. Federal Courts ⚷765, 801, 842, 844**

In reviewing district court's denial of motion for judgment as matter of law, Court of Appeals must examine all evidence in record to determine whether reasonable juror could have found in favor of non-moving party, drawing all reasonable inferences in non-moving party's favor, and refraining from weighing evidence or making credibility determinations. Fed. Rules Civ.Proc.Rule 50, 28 U.S.C.A.

**3. Attorney and Client ⚷72**

Under New York law, party asserting that attorney had authority to enter into contract on behalf of attorney's client bears burden of proving it.

**4. Principal and Agent ⚷126(2), 163(1)**

Without authority for agent to bind its principal in contract with third party, or

* The Honorable Ilana Diamond Rovner did not participate in the consideration of this case.