ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| Therase Lashown Warren, | ) | CR 02-248 DWF/SRN |
| Petitioner/Movant, | ) | Civil Case No. 05-CV-805 (DWF) |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondant. | ) | |

RECEIVED
BY MAIL
AUG 22 2005
CLERK, US DIST. COURT
ST. PAUL, MN

**MOTION TO AMEND PLEADING PURSUANT TO RULE 15**
**FEDERAL RULES OF CIVIL PROCEDURES**

COMES NOW petitioner/movant Therase Lashown Warren, pro se, and moves this Honorable Court to allow amendment of the original pleading of the motion pursuant to 28 U.S.C. §2255 to vacate, set aside, or correct sentence by a person in federal custody.

In support of this motion, Warren states as follows:

(1) Warren timely filed a section 2255 motion with this court on or about April 15, 2005;

(2) This Court has not ordered a responsive pleading from the United States of America, nor has one been filed with the court by the respondant;

(3) Warren presented in ground one and ground two of the original motion that counsel was ineffective for failing to investigate prior misconduct of the prosecutor in a judicial proceeding, and that Warren knew of this case and wished to more fully present evidence of this misconduct to the court and that the prosecutor mislead the court as to this conduct when confronted with it;

SCANNED
AUG 22 2005
U.S. DISTRICT COURT ST. PAUL

(4) Warren now wishes to provide this Court with transcripts of United States v Patrick Ester, Case No. 00-CR-48-MJD (D. Minn. 6/21/00) detailing the testimony of Agent Daniel Faflak, Jr. , questioned by AUSA Jeffrey Paulsen. A true copy of which is attached as an exhibit;

(5) These transcripts point to Mr. Paulsen being untruthful to the court and that the court confronted him as to presenting this misinformation. Mr. Paulsen, in this instant case, stated " I voluntarily dismissed that case. And it wasn't because I was caught in a lie. ... It had nothing to do with anybody getting caught in a lie. It had to do with the view of the quality of the evinence by that particular Court." Sentencing Transcript, page 13.

WHEREFORE Warren has come into the possession of the transcripts of the case presented and discussed at sentencing in the instant case and now wishes them to become evidence of the fact of the prosecutor's unclean hands in the presentation of facts before this court and supports Warren's claims for relief in the original § 2255 motion now before this Court.

Because of the above-stated reasons Warren respectfully prays that the facts presented, along with attached exhibit, be allowed to become part of the papers and pleadings to be considered by the court in providing any just and proper collateral relief.

Respectfully Submitted,

Therase L. Warren

Dated: August 15, 2005

**Therase Lashown Warren, pro se**
Reg. No. 10553-041
P.O.Box 33
Terre Haute, IN. 47808

BY MR. PAULSEN:

Q. Did we obtain a verbatim transcript of Selwyn Hall's guilty plea over in state court to the assault charge?

A. Yes.

Q. We gave it to the defense?

A. Yes.

Q. They have that?

A. Yes.

Q. And we gave them information about Mr. Hall's prior services as an informant down in Florida?

A. Yes.

Q. Which occurred 17 years ago?

A. Yes.

Q. And as you've stated, the records of that are archived?

A. Yes.

Q. We don't have those records?

A. No.

Q. There was some record --

THE COURT: Mr. Paulsen, I would not go there. Approach the Bench.

(Whereas, the following conference was had at the Bench, on the record, and out of the hearing of the jury.)

THE COURT: One, if they are in the knowledge of the Government, then you have them. All right. And, two, we'll talk about it later. I'm pretty sure that you

misinformed me about your knowledge of his -- Mr. Hall's services with the DEA because when we had the pretrial conference, Mr. Smith brought up the police records, and I believe you said that was the first time that you knew about it, but it turns out your DEA, your man here had already called down to Florida regarding his service and had not turned that information over to you and that still links it to you.

MR. PAULSEN: Sure.

THE COURT: I don't want you to go into this area at all. We don't know anything about it because I may order you to get those records, depending on what Mr. Hall says. I'm not happy about this case, I'm really not.

(End of Bench conference.)

MR. PAULSEN: No further questions.

THE COURT: Now, Agent, dealing with -- you worked with the DEA before?

THE WITNESS: Since I've been here in Minnesota.

THE COURT: And dealing with conversations that may be made between an informant and a suspected drug dealer, those can be recorded, is that correct?

THE WITNESS: Yes.

THE COURT: The DEA, the local police all have the facilities to record conversations back and forth?

THE WITNESS: Yes.

THE COURT: Was that done in this case?

THE WITNESS: No, sir.

THE COURT: Was any taping done of what happened in the bar?

THE WITNESS: An attempt was made to listen to it, but there was no tape made, sir.

THE COURT: Okay. Listen to my question. Usually the buttons are pushed and someone is listening?

THE WITNESS: Yes, sir.

THE COURT: I'm asking whether or not the buttons were pushed and whether or not a tape was made?

THE WITNESS: No, there was tape. There was no -- the this device did not have a tape recorder attached to it.

THE COURT: Not the device, but the person listening to the signal?

THE WITNESS: Yes, sir. He did not have a tape recorder with the listening portion of that device for that device.

THE COURT: Then how was anything going to be tape recorded?

THE WITNESS: It wasn't, sir.

THE COURT: Walk me through that, again. You mean you have a bug, a wire and you don't -- you don't have a tape, a tape recorder of what the conversation is?

THE WITNESS: Correct, sir.

THE COURT: Generate any further questions.

MR. SMITH: Yes, Your Honor.

FURTHER RE-CROSS EXAMINATION

BY MR. SMITH:

Q. In the trans -- the person that was listening to the transmission, did they not state that the only reason it was not taped was due to the fact that it was unintelligible, isn't that correct?

A. Well, maybe I said that it wasn't taped because there was no tape player available. The person listening couldn't determine what was being said because he couldn't understand it.

Q. No, I'm sorry. My question to you was, the person that was in charge of the listening device, they didn't state they didn't tape it because there wasn't a tape recorder, they stated that they didn't tape it because it was unintelligible, correct?

A. That may be, yes. I can't answer that question with a yes or no because I didn't -- I was not the person monitoring it.

Q. So, your testimony to the Court just now where you stated that -- where you stated that there was no tape recorder, was that true or not?

A. There was no tape recorder, yes, sir.

Q. But in the submission that we received from the Government, the person that was in charge of the taping and the wire stated that the only reason it wasn't taped was because it was unintelligible. Would you dispute that?
A. No. I don't know what statement you are talking about, sir.
MR. SMITH: Your Honor, I would like to make an offer of proof and submit a memorandum to the Court.
THE COURT: Well, first off, I don't know if it was made. Show him the sheet of paper. If there is a sheet of paper that shows that, let him read it.
Q. Could you read Paragraph 4?
A. At approximately 1620 hours, that's 4:20, drove CS to a parking lot approximately one block from the bar. The CS exited the vehicle CS and walked to the bar. Th CS was observed entering the bar by surveillance units. Sebesta was monitoring the transmitting advice worn by the CS. However, due to poor reception of the conversation was mostly unintelligible and not recorded.
Q. And that's your own report, correct?
A. Yes, sir.
MR. SMITH: No further questions.
THE COURT: Mr. Paulsen, any questions.
MR. PAULSEN: No, sir. Nothing further.
THE COURT: You may step down. We'll take our

afternoon break at this time. We'll recess until 1:30; 1:30.

(Noon recess taken.)

(The following was heard in open court, on the record, and out of the hearing of the jury.)

THE COURT: Mr. Paulsen.

MR. PAULSEN: Your Honor, the United States moves pursuant to Rule 48(a).

THE COURT: The defendant has to consent to this, and I haven't done any research, and for the record tell me whether jeopardy attaches and whether or not this will be retried?

MR. PAULSEN: Jeopardy is attached.

THE COURT: Mr. Smith.

MR. SMITH: No opposition from the defense, Your Honor.

THE COURT: The Court will sign the order. Let's bring out the jury.

Counsel, I don't know if you were aware, Mr. Hall had some mental illness, bipolar mental illness, and also he's made accusations that he was in the Witness Protection Program. I don't know if the Government knew that.

MR. PAULSEN: I did not, Your Honor.

THE COURT: I don't know if the defense knew that.